**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LOUISE TRAUMA CENTER LLC,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Case No. 22-cv-2287-MJS

**MEMORANDUM OPINION**

Under the Freedom of Information Act ("FOIA"), prevailing parties are often awarded reasonable attorney's fees. But that is not always a given. Lawyers who pursue fees bear an important obligation to use reasonable billing judgment and to appropriately and accurately substantiate the legal work for which they seek recompense, perhaps particularly so when the resulting attorney's fees would be paid from taxpayer dollars. When they do not, courts have discretion to reduce—and, sometimes, deny outright—a petition for fees. *Env't Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1260 (D.C. Cir. 1993) ("We regard overbilling the government as a serious transgression, damaging to the public fisc and violative of the trust reposed in each member of the bar."). And that self-created consequence can be especially appropriate for "repeat offender[s]." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 955 (D.C. Cir. 2017) (Henderson, J., concurring). As our Circuit has made clear, "[t]here is simply no excuse for … billing the [g]overnment for unnecessary legal services." *Env't Def. Fund*, 1 F.3d at 1260.

In this FOIA case, counsel for Louise Trauma Center, LLC ("Louise Trauma") seeks an award of more than $100,000 in fees that counsel reports having generated in accomplishing the

release of a modest volume of records from the U.S. Department of Justice. Louise Trauma's counsel is no stranger to FOIA cases, and he is no stranger to the process of seeking fees in FOIA cases. Considering the focus of his practice and his years of experience, one might expect his fee petitions to be a model example for others to follow. But if anything, the opposite seems to be true. In the last few years, many judges in this District have sharply criticized counsel's billing practices and his overall approach to fee petitions, culminating in substantially reduced fee awards and even blanket denials. Regrettably, this case is more of the same. Agreeing with DOJ that Louise Trauma's fee petition here is strikingly unreasonable in several familiar respects, the Court exercises its broad discretion to **DENY** the motion for attorney's fees (ECF No. 41) in its entirety.

## BACKGROUND

This dispute arises from four FOIA requests that Louise Trauma submitted to DOJ, enumerated across four separate counts in Louise Trauma's complaint. (*See* ECF No. 1 ("Compl.").) The Court summarizes each request and its ultimate endgame.

Starting with Count I, Louise Trauma sought records concerning "money paid to Brian Fitzpatrick, for the research and development of the Fitzpatrick Matrix." (Compl. ¶ 8.)[1] Prior to the Court's initial hearing, DOJ identified more than 5,000 pages of responsive material. (ECF No. 12 at 3.) Louise Trauma wanted 3,000 pages produced within 30 days, while DOJ suggested it could process 300 pages per month. (*Id.* at 4.) The Court disagreed with both proposals and ordered

---

[1] In simple terms, the "Fitzpatrick Matrix" is a fee matrix developed by the U.S. Attorney's Office for the District of Columbia that identifies prevailing hourly rates for attorneys of varying experience levels—and other legal professionals—who are involved in complex civil cases in D.C. federal courts. *See The Fitzpatrick Matrix*, U.S. Att'y's Off. for the Dist. of Columbia, Civ. Div., https://perma.cc/ALH5-C2X7.

DOJ to process 500 pages per month. (*See* Min. Entry, Dec. 14, 2022.)[2] Soon after, the parties agreed to narrow the request, and DOJ completed disclosure in April 2023. (ECF No. 15 at 2.)

Turning to Count II, Louise Trauma sought disclosure of all records "used to prepare the Fitzpatrick Matrix." (Compl. ¶ 14.) Before this lawsuit, DOJ had released 32 pages in response, but Louise Trauma challenged that response as inadequate. (*Id.* ¶¶ 15–16.) Immediately before (and again during) the initial status hearing with the Court, Louise Trauma withdrew this request, and it was dismissed. (*See* ECF No. 33 at 2–3; Min. Entry, Dec. 14, 2022).

From there, through Count III, Louise Trauma asked for records concerning "training for asylum and immigration officers." (Compl. ¶ 19.) As background, DOJ originally shouldered this responsibility by statute. *See* 22 U.S.C. § 6473(b) ("The Attorney General … shall provide training to all officers adjudicating asylum cases, and to immigration officers … on the nature of religious persecution abroad[.]"). But more than two decades ago, Congress transferred the responsibility to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, Section 451(b), 116 Stat. 2135 (2002); *see also Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 9 (D.D.C. 2020) ("The Department of Homeland Security … is tasked with the responsibility of training federal employees to make sensitive and consequential judgments concerning the asylum eligibility of noncitizens seeking refuge in the United States."). In light of that reality, DOJ advised Louise Trauma in November 2022 that it had no responsive pages to this request. (ECF No. 12 at 4–5.) Undeterred, Louise Trauma continued to press for records for some time, but it ultimately abandoned its request for responsive records from DOJ. (ECF No. 15; ECF No. 16.)

Finally, through Count IV, Louise Trauma sought "records, documents, guidance, templates, emails, and videos concerning: Office of Immigration Litigation training materials for

---

[2] Judge Randolph Moss originally presided over this case before the parties consented to the jurisdiction of the undersigned for all purposes in April 2025. (*See* ECF Nos. 47, 48.)

lawyers in the district court." (Compl. ¶ 24.) By December 2022, DOJ had identified 352 responsive pages, which it said would take a couple months to process. (ECF No. 12 at 5.) At the initial hearing, the Court ordered those documents to be produced by February 2023 (Min. Entry, Dec. 14, 2022), but after its review, DOJ asserted that they were exempt from disclosure (ECF No. 14 at 3). After further discussions between the parties, DOJ eventually released a subset of pages in July 2023, in many cases with redactions. (ECF No. 19 at 1.) From there, Louise Trauma contested DOJ's redactions only on a single, 56-page presentation. (*See* ECF No. 23.) Maintaining that the redacted material was exempt under the attorney-client privilege and as attorney work product, DOJ moved for summary judgment in March 2024. (ECF No. 27.) Surprisingly, Louise Trauma did not oppose the motion. (ECF No. 30.) Instead, it took the position that the only remaining issue to be resolved was "an award of fees and costs." (*Id.* at 1.)

The Court thus denied DOJ's summary-judgment motion as moot and gave the parties until April 2024 to try to sort out fees. (Min. Order, Apr. 12, 2024.) According to DOJ, Louise Trauma provided an initial fee request of $50,000 on or around April 4, 2024, but Louise Trauma failed to share any supporting documents to substantiate the amount. (ECF No. 37 at 13.) DOJ advises that it sent four follow-up emails requesting additional information and support for the fee request, but all went ignored. (*Id.*) Instead, on April 17, 2024, Louise Trauma filed its original motion for attorney's fees and costs, seeking a total amount of $118,017—236% of its original $50,000 fee request to DOJ. (*See* ECF No. 31.) Louise Trauma's counsel does not contest this chronology.

Subsequently, after the motion was fully briefed, DOJ filed notices of supplemental authority to call attention to two new decisions in which judges in this courthouse substantially reduced or altogether denied fee requests submitted by Louise Trauma in FOIA cases. (ECF Nos. 39, 40.) Several months later, Louise Trauma unilaterally filed an amended motion that reduced

4

the total amount of requested fees and costs to $101,582, ostensibly in an "exercise of billing judgment." (ECF No. 41 ("Am. Mot.").) Over DOJ's objection, the Court allowed the amended filing (Min. Order, Mar. 27, 2025), which is now fully briefed (*see* ECF Nos. 49, 50.)

This Court held a hearing in December 2025, and the matter is ripe for decision.

## LEGAL STANDARD

Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). As the D.C. Circuit has ruled, a court retains "very broad discretion" about "whether to award or deny fees." *Morley v. CIA*, 894 F.3d 389, 391, 396 (D.C. Cir. 2018) ("[T]he FOIA attorney's fees statute provides that the district court 'may' award fees to a prevailing plaintiff—and not 'must' or 'shall' award fees[.]").

To secure an award of attorney's fees, a FOIA plaintiff must demonstrate both eligibility and entitlement. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). A party is "eligible" to receive fees if it has "substantially prevailed" in the litigation, by obtaining relief through "a judicial order" or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *see Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). From there, assuming eligibility, courts assess four factors to determine entitlement: "(i) the public benefit from the case; (ii) the commercial benefit to the plaintiff; (iii) the nature of the plaintiff's interest in the records; and (iv) the reasonableness of the agency's withholding of the requested documents." *Morley*, 894 F.3d at 391 (citing *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008)). In carrying out that assessment, "[n]o one factor is dispositive, although the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy*, 550 F.3d at 1159.

5

Even after establishing eligibility and entitlement, a FOIA plaintiff still must show that its requested fees are reasonable. *See Reyes v. United States Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 168–69 (D.D.C. 2018) (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004)). As in other similar contexts, the typical method to calculate a potential fee award in FOIA cases is familiar: "multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (citation omitted). The party seeking fees bears the burden to show reasonableness, and the documentary support "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am.*, 353 F.3d at 970 (citation and quotation marks omitted). Generally, that documentation should comprise "contemporaneous, complete and standardized time records." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982); *see also Citizens for Responsibility and Ethics in Wash. v. FEC*, 66 F. Supp. 3d 134, 148 (D.D.C. 2014) ("Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney.") (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327).

Finally, as the D.C. Circuit has recognized, when a FOIA plaintiff seeks an "'outrageously unreasonable' amount" in claimed attorney's fees and costs, a court may deny the request "in its entirety … lest claimants feel free to make 'unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'" *Env't Def. Fund,* 1 F.3d at 1258 (quoting *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir. 1980)); *see also Louise Trauma Ctr. LLC v. Wolf*, 2024 WL 4227617, at *7 (D.D.C. Sept. 18, 2024). Or, with "less egregious overbilling," a court "may impose a lesser

6

sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request." *Env't Def. Fund,* 1 F.3d at 1258.

## ANALYSIS

Louise Trauma's latest motion seeks $101,582 in fees and costs from DOJ—down modestly from the total request in its original motion ($118,017), but still more than double the initial request ($50,000) it conveyed to DOJ before seeking relief from the Court. In response, DOJ concedes eligibility, at least in part, but challenges both entitlement and the reasonableness of the request, urging the Court to deny any award altogether. Even assuming Louise Trauma could show entitlement, the Court agrees with DOJ that the fee petition—both the overall circumstances surrounding the request and the petition's particulars—is so starkly unreasonable as to warrant wholesale denial. To explain why the Court reaches that conclusion, some additional background about several of Louise Trauma's prior fee petitions—spearheaded in each instance by the same counsel as here—is important. The Court begins its discussion there.

### A.    Louise Trauma's "Repeat Offender" Status

This is not the first time Louise Trauma has pressed a problematic fee petition. Far from it.

Consider first *Louise Trauma Center LLC v. U.S. Department of Homeland Security*, 2023 WL 3478479 (D.D.C. May 16, 2023). There, Judge Trevor McFadden took issue with counsel's billing records because they showed "significant inefficiencies," reflected "a lack of billing judgment," and "teem[ed] with ambiguous entries." *Id.* at *6–7. Because of those shortcomings, the court reduced counsel's requested hours by 40% across the board. More, the court reduced the requested "fees on fees"—*i.e.*, the amount counsel reported having spent on the fee motion itself— by more than 75% after finding that aspect of the request "unreasonable." *Id.* at *7.

7

About a year later, Judge John Bates echoed many of these same concerns in applying a 50% reduction to counsel's claimed hours in another Louise Trauma fee petition, including a 50% reduction on counsel's claimed "fees on fees." *Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.*, 2024 WL 3251225, at *8–9 (D.D.C. July 1, 2024). This result, the court explained, was driven by counsel's attempt to recover fees for time spent on "clerical tasks," "unsuccessful" motions, "excessive or unnecessary tasks," and more. *See id.* Judge Bates made a point to highlight that counsel had "previous been chastised" for "many of the same issues." *Id.* at *8.

Less than three months later, two more judges from this District took Louise Trauma's counsel to task for the same problems once more. *Louise Trauma Ctr. LLC v. U.S. Dep't of Just.*, 2024 WL 4227635 (D.D.C. Sept. 18, 2024); *Wolf*, 2024 WL 4227617.

In one, Judge Rudolph Contreras followed Judge McFadden's lead, opting to reduce counsel's requested fee award by 40% globally. In doing so, the court denounced counsel's lack of sufficient billing detail as "particularly egregious" and took issue with the attempt to recover fees associated with unsuccessful claims and obvious "secretarial" work, among other concerns. *Louise Trauma*, 2024 WL 4227635, at *5–8. More, as was true in the earlier cases, Judge Contreras substantially reduced counsel's request for fees on fees—this time, by nearly 75%. *Id.* at *9.

In the other case, Judge Dabney Friedrich went farther, denying Louise Trauma's request entirely. *Wolf*, 2024 WL 4227617, at *3–7. Just as in the prior cases, the court criticized counsel's billing as "vague, inadequately descriptive, or made in error" and decried counsel's "extraordinary lack of billing judgment." *Id.* at *4, *5. As Judge Friedrich put it, counsel "not only demand[ed] a sum that is plainly excessive" but "also engage[d] in the same unreasonable and improper billing practices for which he has been admonished repeatedly by this Court." *Id.* at *7. So the court denied fees outright to deter more of the same and "as a means of encouraging counsel to maintain

adequate records and submit reasonable, carefully calculated and conscientiously measured claims." *Id.* (quoting *Jordan v. DOJ*, 691 F.2d 514, 518 (D.C. Cir. 1982)).

To sum up, in least four different cases presented to four different judges in this District, Louise Trauma—represented by the same counsel seeking fees in this case—saw its fee petitions reduced by substantial amounts or ultimately denied altogether for the same recurring problems. Even more recently, Judge Reggie Walton denied another fee request outright from Louise Trauma's same counsel—representing a different client in that case, however—for these same overall reasons. *Gatore v. U.S. Dep't of Homeland Sec.*, 2025 WL 721804, at \*5–8 (D.D.C. Mar. 6, 2025) (decrying many of the same "deficiencies" that "continue to plague counsel's requests for attorney's fees despite multiple reprimands from other members of this Court").[3]

Along with the specific issues regarding counsel's fee petition here, in particular, this broader backdrop informs the Court's assessment as to the palpable unreasonableness of Louise Trauma's motion for fees.

### B.        Louise Trauma's Apparent Inflation of its Fee Request(s)

The Court turns next to the circumstances preceding Louise Trauma's original motion for fees. Recall the D.C. Circuit's longstanding caution that courts should be on the lookout for litigants who seek "unreasonable" fee amounts "knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Env't Def. Fund*, 1 F.3d at 1258 (quoting *Brown*, 612 F.2d at 1059); *Baylor*, 857 F.3d at 954 (Henderson, J., concurring) (warning against litigants submitting "an excessive demand in

---

[3] What's more, this troubling track record is not isolated to cases in this courthouse. *See, e.g.*, *Louise Trauma Ctr. LLC v. USCIS*, 2024 WL 3964761, at \*4 (D. Md. Aug. 28, 2024) (similarly reducing fee petition by Louise Trauma's same counsel by 50%, including for "inefficiencies and a lack of billing judgment").

hopes that the award, although short of the demand, will be artificially high"). The lead-up to the original motion here strongly suggests that this case presents a textbook example of that concern.

On April 4, 2024—less than two weeks before filing its original fee motion—Louise Trauma filed its non-opposition to DOJ's motion for summary judgment. (ECF No. 30.) In that filing, Louise Trauma "suggest[ed] that the parties discuss fees and costs" to attempt to settle that remaining aspect of the case. (*See id.* at 1.) According to DOJ, it promptly reached out and asked Louise Trauma's counsel for an amount of fees and costs being claimed, and the response was $50,000. (*See* ECF No. 37 at 13.) Because the request was unaccompanied by any documentary support, DOJ reportedly followed up four separate times asking for that information; as DOJ tells it, Louise Trauma's counsel never responded. (*See id.*) Instead, on April 17, 2024, Louise Trauma simply filed its original motion seeking a total of $118,017 in fees and costs. (*See* ECF No. 31.)

Just reciting that sequence of events—Louise Trauma's counsel valuing fees and costs at $50,000 to DOJ, but then seeking an award from the Court at more than twice that amount less than two weeks later—reveals that it "smacks of the kind of bad-faith bargaining tactic properly deterred by the denial of a fee award." *Wolf*, 2024 WL 4227617, at *7. The Court acknowledges, to be sure, that some of the increase would be attributable to additional hours Louise Trauma's counsel expended on the fees motion itself—so-called fees on fees, which presumably would not have been part of the claimed total a couple weeks prior. But that comes nowhere close to explaining the full reason for the ballooned request. After all, the original motion specified the component of the requested award attributable to fees on fees: $21,216. (ECF No. 31 at 1, 31.) So even accounting for that consideration, Louise Trauma still nearly doubled its requested fee award as between the amount originally conveyed to DOJ and the amount included in their motion.

10

The Court separately acknowledges that Louise Trauma's initial number to DOJ was likely meant to encompass some compromise discount from the full value Louise Trauma might seek through a motion, *i.e.*, trading some potential recovery in exchange for the benefit of certainty and the ability to avoid tedious and time-consuming motions practice. That is a common dynamic in the context of settling fees-and-costs claims, just as in any other settlement context. And the Court certainly does not mean to suggest bad faith or improper tactics any time a party asks the Court to award a greater amount of fees than it was previously prepared to accept in compromise. But on this record, including the prior judicial finding of Louise Trauma's counsel's history of similar "bad-faith bargaining" practices, *see Wolf*, 2024 WL 4227617, at *7, coupled with the fact that Louise Trauma's counsel repeatedly neglected to provide DOJ with contemporaneous record support for any claimed fee amounts before filing its motion despite repeated (and understandable) follow-up requests, the Court is comfortable rendering that assessment here.

But what about the fact that Louise Trauma's counsel ultimately opted to file an amended motion lowering the requested fees by nearly 14%, down from $118,017 to $101,582? The Court reflected on that development. But on balance, it amounts to little more than window dressing. The Court wants to be clear that lawyers, in seeking recovery of fees, *should* thoughtfully reflect on the reasonableness of their time spent on a matter, informed by the particular facts of the case, its results, and more. Nothing the Court says here should be construed otherwise. The problem for Louise Trauma's counsel boils down to when and how he engaged in that process in this case.

Start with the "when." Counsel's supposed exercise of billing judgment came too late, only after Louise Trauma first sought a higher award—alongside an attestation from counsel that he already "carefully reviewed [his] time entries to exercise appropriate billing judgment" (ECF No. 31-2 ¶ 32)—and only after DOJ supplemented the record with several judicial decisions chastising

11

counsel's prior fee requests. Proactive billing judgment is one thing, but counsel's approach here was reactive through and through, which seems to play into the very concerns just flagged about starting high with the expectation of landing lower. *See Env't Def. Fund*, 1 F.3d at 1258.

The "how" is similarly problematic. One might have expected Louise Trauma's counsel's amended motion to respond to DOJ's "degree of success" arguments, for instance, especially since other judges had flagged the same concern in prior rulings. *See, e.g.*, *Louise Trauma*, 2024 WL 4227635, at *7 ("[A]warding the Center fees for its efforts on *unsuccessful* claims would be unreasonable"). Here, Louise Trauma withdrew two of its four FOIA claims (Counts II and III) mid-litigation, so even if one were to fully credit Louise Trauma's perspective that it completely succeeded on the other two claims, that result would still counsel in favor of a meaningful reduction from the overall lodestar amount. *See, e.g.*, *See Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 369 (D.C. Cir. 2006) ("A plaintiff's overall success on the merits also must be considered in determining the reasonableness of a fee award."). Louise Trauma's amended motion mentioned nothing of the sort, and neither did it employ or explain any other cogent methodology of reduction. Instead, as DOJ fairly describes it, Louise Trauma's counsel arbitrarily reduced his overall fees across each year by varying amounts, without any coherent explanation underlying those reductions and without any apparent consistency in the approach. Again, the Court applauds attorneys who scrutinize their work and employ judgment in pursuing fee awards, but without a cohesive methodology behind that process (*e.g.*, a blanket discount to account for the ultimate degree of success, consistently reducing one lawyer's time to address claimed inefficiencies, identifiably removing time spent on unsuccessful claims or unsuccessful motions), the effort comes across as confusing and arbitrary. And the resulting confusion and arbitrariness can raise questions as to whether counsel truly stands behind the reliability of the billing records at all.

Counsel's amended motion—and the renewed exercise of "billing judgment" that supposedly animated it—was too little, too late. It does not mitigate the broader concerns identified above.[4]

In sum, this backdrop alone goes a long way toward demonstrating the sheer unreasonableness of Louise Trauma's fee request, and that is before even talking about the particular and persistent problems that plague counsel's billing records. The Court turns there next.

**C.      Louise Trauma's Counsel's Billing Deficiencies**

To recap, Louise Trauma's counsel has faced repeated criticisms from multiple members of this Court when it comes to past billing practices, including concerns about poor billing judgment, excessive billing, ambiguous time entries, time spent on clerical and non-legal work, non-contemporaneous billing records, and more. *Gatore*, 2025 WL 721804, at *5–8; *Wolf*, 2024 WL 4227617, at *3–7; *Louise Trauma*, 2024 WL 4227635, at *5–8; *Louise Trauma*, 2024 WL 3251225, at *8–9; *Louise Trauma*, 2023 WL 3478479, at *6–7. This case: déjà vu.

Through its briefing, DOJ identifies many examples of the same sorts of billing practices that triggered substantial reductions—or outright denials—of prior fee awards to Louise Trauma's counsel. The Court highlights some examples for discussion's sake.

- For starters, counsel billed for seemingly unnecessary and excessive work. As an example, on April 4, 2024, counsel billed 18 minutes to reviewing a five-sentence filing (ECF No. 29) that DOJ contemporaneously advised had been filed in error because it was meant for another case. (*See* ECF No. 41-3 ("Am. Billing Records") at 14.) Counsel's billing even includes separate six-minute entries for review of the proposed order and certificate of service accompanying the mistaken filing. Setting aside the unreasonableness of seeking *any time* spent on this activity, the entire submissions take less than a moment to read, yet counsel artificially inflated that

---

[4] As a final point, the Court notes that the amended motion seeks $30,240 for "fees on fees," a substantial increase from the amount counsel first sought for that work. Embedded in that request, counsel continues to seek fees for briefing on the *original* fee motion, even though the Court denied that motion as moot after Louise Trauma's counsel essentially withdrew reliance on it. This is just one example of unreasonable billing judgment, arising rather ironically in the context of an amended motion that purports to be premised on counsel's renewed effort to exercise reasonable judgment.

time spent by separating out the review of the joint status report from the proposed order from the certificate of service. This sort of tactic is troubling to say the least.

- Similarly, counsel's practices surrounding the review of many docket entries raises concerns. On July 31, 2023, for instance, counsel billed nearly twelve minutes to reviewing a docketed joint status report that he already spent nearly a full hour reviewing and revising in conjunction with DOJ counsel that same day. (Am. Billing Records at 9.) Other than a quick review of the electronic filing notification to confirm that the proper report was filed, the Court cannot understand why counsel would have spent more than a moment reviewing that filing, much less billed for it. This issue persists across multiple joint status reports, including those filed on March 3, 2023, May 3, 2023, June 30, 2023, and September 4, 2023. (*Id.* at 5, 8, 9, 10.)

- Other billing entries raise similar concerns. Despite never pursuing any sort of mandamus relief in this case, on July 1, 2023, counsel billed nearly an hour and a half to researching "delay cause of alleged lack of resources; study of when mandamus issued." (Am. Billing Records at 8–9.) A few weeks prior, on May 26, 2023, counsel billed time to the "study" of another case in which he was counsel of record and represented the same client. (*Id.* at 5.) That strikes the Court as unreasonable, especially if counsel was likewise billing his "study" to the underlying case. And as another example, on June 9, 2024, counsel billed three separate 1.3 entries for what appears to be the same work, just with synonyms substituted for the action verb. (*Id.* at 17 ("1.3 *editing* entire Motion, 1.3 *revising* entire Motion, 1.3 *Double-checking* entire Motion") (emphases added).)

- Several aspects of the billing records leave the Court uncertain even as to the time that counsel claims to have expended, whether in broader terms or on specific tasks. The amended motion asserts that counsel worked 83.7 hours in 2023 (Am. Mot. at 26), but the accompanying itemization of hours claims 79.1 hours (Am. Billing Records at 12). Other courts have flagged similar incongruence in counsel's submissions before. *Louise Trauma*, 2024 WL 3251225, at *7 ("[T]he time records submitted claim 90.5 hours in fees …. But, in fact, when the itemized figures are added up, they only amount to 89.2 hours[.]"). As a more granular example, on June 6, 2024, counsel billed ".1." to "revising Ex. B," leaving the Court to guess which of the two decimal points to credit. Did counsel bill a tenth of an hour, or a full hour? *See Wolf*, 2024 WL 4227617, at *4 (criticizing counsel's "misplacing the decimal point" on multiple entries).

- Additionally, counsel's "records teem with ambiguous entries." *Louise Trauma*, 2023 WL 3478479, at *7. On March 2, 2023, counsel billed nearly an hour to "Study of file, preparing drafts, confirming with OC." (Am. Billing Records at 4.) On June 14, 2023, counsel billed a 12-minute entry to "Review of file; memo to file; mark calendar for deadlines." (*Id.* at 6.) On August 15, 2023, counsel billed a 24-minute entry to "Review of file and history, email to OC." (*Id.* at 10.) On September 4, 2023, counsel billed another 24-minute entry to "study of file, memo to file about ideas and strategies, while it is fresh in my mind." (*Id.*) These serial

14

"memos to file" are largely unexplained and non-specific, which precludes the Court from evaluating the reasonableness of the work undertaken or the reasonableness of the time spent. As a final example, on June 7, 2024, counsel simply listed "reasonable number of hours" next to an 18-minute entry. (*Id.* at 17.) Perhaps this is a category of research that counsel performed, or perhaps a section of a brief that counsel prepared, or perhaps it is just counsel's personal characterization of the value of the time he spent doing some other, unspecified task. Without more, the Court has absolutely no idea what to make of that description.

• Counsel also seeks fees for various clerical tasks that are not properly compensable as legal work, including descriptions for "double-checking secretary's work," "double-checking secretarial work," "checking Post Office website for service of process," "calendaring," and more. (*See* Am. Billing Records at 2, 15, 16, 17.) Counsel has been chastised for this before: "These clerical tasks do not merit compensation near a thousand dollars an hour." *Wolf*, 2024 WL 4227617, at *5.

Again, these are illustrative concerns, many of which were flagged by DOJ, and several of which were identified by the Court through its own review of the record. But similar examples abound. Taken as a whole, these pervasive problems leave the Court with little confidence as to the reliability of counsel's billing records or the overall reasonableness of counsel's claimed fees.

As a final point, the Court has real concerns about the potential contemporaneousness of the records Louise Trauma's counsel submitted with the petition, especially those accompanying the amended motion. First, from a big-picture perspective, counsel interspersed what seem to be after-the-fact legal arguments into a document that is supposed to encompass contemporaneous time entries dating back to 2023. (*See generally* ECF No. 41-3.) That sort of advocacy belongs in a brief, not in billing records. Presumably, counsel believed those additions would bolster the strength of the fee request. If anything, they had the opposite effect because the additions undermine any confidence that Louise Trauma's counsel was preparing these records in real-time while he was performing the work described. Moreover, and as DOJ points out, counsel's billing records changed in several different respects as between the original motion and the amended motion. (*See* ECF No. 49 at 9–14 (charts comparing counsel's original entries to corresponding

15

amended entries).) Many of these changes are reductions in time, which the Court can charitably attribute to counsel's claimed effort to exercise billing judgment in seeking reduced fees through the amended motion. But the way counsel recorded the reductions—simply lowering the time attributed to tasks as though the lower amount was there all along, without some annotation reflecting the after-the-fact reduction—creates more confusion than necessary.

In any case, DOJ highlights other changes that are far more concerning. For several entries, counsel appears to have shifted activities to entirely different dates, sowing serious doubt about when the work was supposedly done and when the entries were created. (*See* ECF No. 49 at 10 (chart showing entries shifted from April 11 to April 14, 2024, and from April 13 to April 15, 2024, seemingly for the exact same activity).) And in other cases, counsel *increased* the time billed. (*See id.* at 13 (identifying November 1, 2023 entry reflecting conference that increased from 30 to 48 minutes, and a March 3, 2024 entry describing the same "review" work that jumped from 6 to 24 minutes).) Those alterations belie any indication that the records were created contemporaneously.

The Court acknowledges that these various examples, in isolation, could be viewed as relatively modest problems. But taken together, they add up to something far more disquieting. And when evaluating reliability, exemplar issues like these are often emblematic of broader concerns. Suffice it to say, the billing records here are a far cry from the type of trustworthy support that would allow the Court "to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am.*, 353 F.3d at 970.

*    *    *

Ultimately, given the concerning combination of issues discussed—Louise Trauma's counsel's troubling track record in many recent fee cases, the lead-up to Louise Trauma's counsel's original fee motion reflecting an apparently inflated fee request, and the myriad and familiar

16

deficiencies with counsel's billing records—the Court concludes, in keeping with its broad discretion, that the appropriate result is to deny Louise Trauma's fee request outright.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's amended motion for attorney's fees (ECF No. 41) in full. The Court will issue a separate order so stating.

Dated: March 31, 2026

                MATTHEW J. SHARBAUGH
                United States Magistrate Judge